1 F.3d 1233
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mayhugh H. HORNE, JR., Plaintiff-Appellant,
v.
CONTINENTAL CASUALTY COMPANY, Defendant-Appellee.
 No. 92-2362.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 8, 1993.
Decided: August 12, 1993.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.
 Shelley Blum, for Appellant.
 John Thompson Daniel, Jones, Hewson & Woolard, for Appellee.
 W.D.N.C.
 AFFIRMED
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Mayhugh Horne appeals from an order of summary judgment entered by the district court finding that he was not covered by an accident insurance policy issued by Continental Casualty Co. ("CNA") and purchased through his employer, Pan American World Airways ("Pan Am"). The district court held that Horne knew or should have known that under the terms of his employer's group benefit plan he could not have extended his accident coverage beyond his period of active employment. Horne raises three issues on appeal: whether the district court erred (1) in its interpretation of the CNA insurance contract; (2) in finding that the doctrine of estoppel should not be considered in interpreting allegedly ambiguous language in the plan; and (3) in its analysis of the doctrine of estoppel. Finding no error, we affirm the decision of the district court.
 
 I.
 
 2
 This case arises from the interpretation of an accident policy paid for through an employee payroll deduction plan, thereby bringing it within the scope of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et seq .
 
 
 3
 Prior to October 1987, Horne was employed as a pilot by Pan Am. As a full-time employee, Horne participated in his employer's group insurance plan ("Plan"). A copy of the Plan was not provided to Horne; however, he was provided a Plan summary.
 
 
 4
 The Plan itself stated that "all active, full-time employees of the Holder [Pan Am]" are eligible to be insured. It provided that full-time employees who retired from Pan Am could continue to participate in the Plan subject to certain restrictions. The Plan stipulated that employees who took a leave of absence for up to twelve months could continue to participate in the Plan, but that their insurance premiums must be paid in advance. It limited the extension of benefits coverage under certain provisions to six months following the time the insured no longer remained eligible to participate. There was no special set of guidelines for the termination of benefits for full-time employees who became disabled. The Plan, however, provided that the insured's coverage would terminate "on the premium due date that falls on or next follows the date such person ceases to be associated with the Holder in a capacity that makes him eligible for this insurance."
 
 
 5
 On October 22, 1987, Horne suffered his first disability resulting from Chronic Fatigue and Immune Disorder Syndrome, and Pan Am placed him on disability leave. On December 2, 1987, Pan Am wrote Horne informing him that he was considered a grounded airman, disabled, and entitled to a semi-monthly benefit. The letter further stated:
 
 
 6
 If you are currently participating in any one of the following programs, deductions will continue to be made from your disability income payments.
 
 
 7
 Voluntary Personal Accident (CNA) (coverage will automatically terminate after 12 months).
 
 
 8
 Horne was enrolled in the Voluntary Personal Accident program and elected to continue its coverage after being placed on disability. The Voluntary Personal Accident program provided Horne with a "Weekly Accident Indemnity" and "Supplemental Accident Medical Reimbursement Benefit." The Weekly Accident Indemnity entitled Horne to receive up to $250.00 per week for 52 weeks of disability, and the Supplemental Accident Medical Reimbursement Benefit compensated Horne for any of his medical expenses that were not otherwise covered. Pan Am continued to withhold money from his disability income for the insurance premiums until May 1990.
 
 
 9
 Although Horne was considered disabled for purposes of being a commercial airline pilot, he was self-employed as a realtor and insurance agent. On February 27, 1990, Horne was involved in an automobile accident in Charlotte, North Carolina. As a result, he received a second set of disabling injuries whereby he could not continue his livelihood as a realtor and insurance agent. He filed a reimbursement claim under the Supplemental Accident Medical Reimbursement for his uninsured medical expenses and applied for the $250.00 per week disability benefit under the Weekly Accident Indemnity.
 
 
 10
 On May 3, 1990, Pan Am wrote the insurance adjuster handling the matter, noting that the premium deductions for the benefits were in error since Horne was no longer eligible for coverage. His eligibility ended when he ceased to be an active full-time employee and therefore Horne could not receive the benefits he claimed. Pan Am informed the claim adjuster that Horne was entitled to a $333.44 total refund for the premiums he had paid. Pan Am also informed the CIGNA Insurance Co., which had succeeded CNA as the provider of benefits, that Horne was entitled to a premium refund. Pan Am then informed Horne that he was not eligible to receive the benefits for which he had applied under the Plan and offered Horne a full refund of the premiums he had paid. Horne refused the offer and submitted his claim to CNA, the original provider of benefits.
 
 
 11
 On July 23, 1990, CNA's claim adjuster acknowledged receipt of Horne's claim. On October, 25, 1990, another claim adjuster informed Horne that his claim for medical reimbursement was approved. CNA requested further medical information. On April 24, 1991, CNA advised Horne that, in fact, he was not covered for the benefits claimed. CNA again offered Horne the $333.44 reimbursement for the premiums he had paid and Horne again refused to accept
 
 
 12
 it.
 
 
 13
 Horne filed suit against CNA seeking enforcement of the provisions of the policy. The parties stipulated to the facts and each party made a motion for summary judgment. The district court held for CNA; it found that Horne was no longer eligible for the benefits at the time of the automobile accident. It also held that the doctrine of estoppel did not apply in this case. This appeal ensued.
 
 II
 
 14
 Following oral argument, after reviewing the record and the district court's opinion in this case, we find no error. Therefore, we affirm this case on the sound reasoning of the district court's opinion. Horne v. Continental Casualty Co., No. CA-91-278 (W.D.N.C. Sept. 25, 1992). The decision of the district court is
 
 AFFIRMED